CARY MFG. CO. v. DE HAVEN.

(Circuit Court,. E. D. New York. March 29, 1898.)

1. PATENTS—PROCESS AND PRODUCT—METAL BOX STRAPS.
    The Cary patents, No. 441,354, for a "method and machinery for making metal box straps," and No. 441,353, for a box strap cut with beveled edges from a sheet of metal, and having such edges "curled inward upon themselves," and pressed down upon the edges of the band, construed, and *held* not to cover either the process or product of rolling the straps between ordinary flat rollers, even if this produces curling inward of the beveled edges, as described in the patent.

2. SAME.
    The Cary patent, No. 403,247, for an improvement in reels for box straps, *held* valid as to claim 2, as disclosing patentable invention in the combination, and also *held* infringed.

Final hearing, upon pleadings and proofs, of bill in equity alleging infringement of three patents issued to S. C. Cary, and assigned to complainant.

A. G. N. Vermilya, for complainant.

Comstock & Brown (Albert Comstock, of counsel), for defendant.

LACOMBE, Circuit Judge. The patents are three in number: No. 403,247, issued May 14, 1889; No. 441,353, issued November 25, 1890; and No. 441,354, issued November 25, 1890. No. 441,354 is for improvements in "the method of and machinery for making metal box straps." Box straps are made by cutting strips of metal of proper width from a metal sheet, and uniting said strips endwise to constitute a metal strap of indefinite length. The action of the cutting or slitting knife in separating the bands or strips from the sheet edge produces a sharp and somewhat inclined edge or "burr" on each side along the bands or strips. The specification states:

*Fig. 1.*

"The knife, as it passes through the sheet metal, deflects or bends it more or less along the line of the cut to somewhat below or beyond the plane under face of the sheet, and, as it makes the cut, forces or carries the metal to a sharp edge on each side of the cut, as plainly shown at a. These sharp

edges, a, in bands thus cut from a metal sheet, prevail on the bands from end to end, and are very objectionable when the bands are employed to constitute a box strap, as they are exceedingly liable to cut and wound the hands of the users of the strap. The object of my invention is to remove this objectionable feature from metal box straps of the class described."

It is, of course, obvious, that such sharp edge or burr could be removed with a chisel or a file, or be beaten down by strokes with a hammer, and that the results obtained by the blows of a hammer might also be obtained by running the strip between flat-surfaced rollers, under pressure, is elementary mechanics. By the latter operation the metal in the burr would be forced back into the plane of the surface of the strip. The patentee evidently assumed, and assumed correctly, that his machine must do more than this if he expected to claim that it exhibited patentable novelty in the product. Apparently, at that time, he had not persuaded himself that he would be entitled to the exclusive control of elementary processes of metalworking simply because he was the first to apply them in the manufacture of box straps. He therefore sets forth in his specification that his invention consists "in curling the side edges [burrs] of the bands or strips over upon themselves, respectively, and pressing them closely to the body of the bands," and in "mechanism by which the said bands or strips have their side edges rolled or curled over upon themselves," etc.

It is unnecessary to describe in detail the machine by which the patentee accomplished this result. Its characteristic feature is a pair or pairs of "rollers which are grooved peripherally, and the members of each pair of which are mounted and geared so as to * * * adapt them to receive the band or strap between them edgewise, with the strap edges inserted in the peripheral grooves on the rollers." The specification, after more fully describing the machine, says further: "By this means the said sharp edges are curled inwardly upon themselves, and pressed to the band body," etc. The first claim is:

"(1) The method of making metal box straps, which consists in cutting metal bands or strips of the desired width from a sheet of metal, joining said bands or strips together endwise to constitute a metal strap of indefinite length, and, either before or after said bands or strips are thus jointed endwise, rolling or curling the side edges thereof over and upon themselves, respectively, and pressing them to the body of the band, substantially as and for the purpose set forth."

Patent No. 441,353, which was applied for at the same time, and issued on the same day, as No. 441,354, is for the box strap with its sharp edges or burrs curled over and pressed down in the manner described. Its claim is:

"A metal band for box straps, cut with thinned or beveled edges from an edge of a sheet of metal, and having said thinned or beveled side edges curled inward upon themselves, respectively, and pressed closely to the band body at, upon, and along said side edges thereof, substantially as and for the purpose set forth."

The contention of complainant that a box "strap that had the burr removed, even though only passed between flat rollers, would be included in the claim," cannot be sustained. The process of removing

inequalities in the surface of metal by passing between flat rollers was known to the art probably before the patentee was born. A court may surely take judicial notice of elementary mechanical operations. The complainant's contention that claim 1 of patent 441,-354 covers and secures to him the exclusive right to apply that operation to slitted steel bands, for the purpose of removing the burr, is preposterous. There is not a scintilla of evidence to show that defendant curls the sharp edges or burrs over upon themselves, either by the use of grooved rollers or other mechanical equivalents. If running the strip between flat rollers will of itself produce the "curling over," which was the alleged improvement of Cary's patent, then the patentee invented nothing except an unnecessarily complicated machine for producing a result already secured in a more simple manner. The evidence shows that defendant's strips pass through flat rollers only. These would throw down any burr to a position flat with the strap. Afterwards defendant's strap is coiled up on a winder between flanges of iron on each side to guide the strap, the flanges being three-fourths of an inch apart, and the strap five-eighths of an inch wide. The suggestion of the patentee that this operation produces the "curling over" accomplished by his grooved rollers is not persuasive. On these two patents there must be a decree for defendant.

The third patent, No. 403,247, is for an improvement in reels for box straps. Precisely what it is will be apparent from the drawings and specification:

"C is a spool journaled to revolve freely upon a shaft, c, in a frame, D. This frame, D, consists of two arms, d and d1, which extend from the shaft, c, parallel to each other, to a point somewhat beyond the line of the circumference of the intended coil of strap upon the spool, and which are united

together at their extended or outer ends, as shown at $d^2$. In each said outer end is formed an opening, $d^3$, the openings registering with each other in both said ends, as shown. The said frame, D, may be conveniently formed of a metal band bent upon itself flatwise about midway its ends, to constitute the two parallel arms, d and $d^1$, and the shaft, c, may be seated in the free ends of the band, the openings, $d^3$, being punched in the band near its bend, as shown. The shaft, c, is a hollow shaft, as shown, and the arms, d and $d^1$, are sufficiently distant from each other to permit the spool, C, to revolve on its shaft between them, as shown. A box strap of metal is coiled flatwise on the spool, C, and when the coil is complete, as described, a pin or nail, f, may be forced into the corresponding openings, $d^3$, in the outer end of the frame, so that the end of the coil may rest against or be turned backward over said pin, as shown in Fig. 1, and the resiliency or spring-like action or tendency of the entire coil acts to press the strap end against said pin snugly, and hold the coil firmly in position on the spool and in the frame. Thus coiled and held, the strap is adapted for transportation. It is designed and intended that the coiled strap in the described frame reel shall be mounted, at the place where it is severed, into definite desired lengths for sale or use, upon some convenient support, as the side of a shop-counter or a post. To accomplish this, the reel is mounted upon the support—such as is shown at E—by driving a nail or pin, $f^1$, through the hollow shaft, c, and into the support, and driving a nail or pin, f, through the corresponding openings, $d^3$, in the frame and into the support, as shown. By this means the framed reel is held firmly in position on the support, and the spool and coil are free to revolve on the shaft, c, of the former in unreeling the strap. Furthermore, the fastening nails, together with the hollow shaft, c, may be made to serve to draw or hold the sides, d, $d^1$, of the frame closely to the edges of the strap coil, so as to hold the strap from uncoiling without the exertion of force by the operator on the free end of the coil. The strap coil will also, by its resiliency as it is uncoiled, when not held by the frame side, d, $d^1$, be carried against and held by the pin, f, and prevented from unreeling."

A modified form is also shown in drawings and specification, wherein the frame, D, extends entirely across the strap coil, being a mere duplication of the device above described. The first claim of the patent covers the single or radial frame; the second claim covers the double frame, and infringement of such claim is not disputed. It reads:

"(2) A reel for metal box straps, consisting of a spool, C, adapted to have the metal strap coiled upon it, an axle, c, upon which said spool is journaled, and a frame, D, composed of parallel arms, d and $d^1$, in which said axle is mounted, and which extend diametrically across said spool, and reach in opposite directions beyond the rim thereof, as described, and are united at their outer ends, and therein have the respective corresponding openings, $d^3$ and $d^4$, adapted to receive fastening pins, substantially as and for the purpose set forth."

Three prior patents are cited in defense: Cockcroft, No. 193,487, July 24, 1877; Leistner, No. 233,358, October 19, 1880; and Keuffel, No. 338,602, March 23, 1886. Neither of them is claimed to be a complete anticipation, but it is contended that they show the state of the art to be such as to preclude the court from finding patentable invention in the Cary reel. Complainant's brief epitomizes what was wanted when Cary entered the field, viz.:

"Something cheap, which would hold the coil in shape for shipping; not interfere with its handling during that operation; be readily secured in such position that the straps might be uncoiled and used, a little at a time; permit its ready uncoiling then, but hold the coil with a tension during the uncoiling of so much as was needed at the time, that too much might not run off; and also hold it from uncoiling during the time the strap was not being used."

That the patentee's device secures all these advantages is apparent from the specification and drawings. Some of these advantages, however, were secured by like instrumentalities already employed for such purposes. Other of the patentee's instrumentalities are obviously those of an ordinary skilled workman. Thus, a radial arm, bent over so as to clasp the roll and prevent its slipping off the reel, is shown in Cockcroft, and the use of double arms is suggested. The hollow center axle is also found in the art, and it certainly was not invention to punch nail holes in the arms so as to fasten the device against a post, nor to bend the end of the coil over a nail to keep it from reeling out when not in use. Nowhere in the prior art, however, is there found the device for "braking," whereby the arms are tightened upon the coil or loosened if required. In view of the evidence as to the favorable reception accorded by the trade to the Cary reel, I am not prepared to hold that there was no invention in his combination, which obtains from the old instrumentalities this novel function, besides their old and obvious ones. The patent is an extremely narrow one. It would not be infringed by defendant's device if the latter had its arms rigid against compression, so that they could not act as a brake; but, on the proof as it stands, the combination of claim 2 seems to exhibit patentable novelty, and it is certainly convenient and useful. The claim does not specifically set forth this element of the combination functionally, but the reference therein to the "openings therein, $d^3$ and $d^4$, adapted to receive fastening pins, substantially as and for the purpose set forth," is sufficient to warrant the court in reading into the claim, in order to uphold the patent, the function set forth in the specification in the sentence beginning, "Furthermore, the fastening nails," etc. Complainant may, therefore, take the usual decree on claim 2 of this patent. No costs to either side.